[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11258
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-04365-ODE


FELICIA A. WILCOX,

Plaintiff-Appellant,

versus

CORRECTIONS CORPORATION OF AMERICA,
a.k.a. McRae Correctional Facility,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 11, 2015)

Before TJOFLAT, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Felicia A. Wilcox appeals the district court's grant of summary judgment for defendant Corrections Corporation of America (CCA) in her suit alleging sexual harassment and retaliation under Title VII of the Civil Rights Act.  After careful review, we reverse the district court's grant of summary judgment on the sexual harassment claim and affirm its grant of summary judgment on the retaliation claim.

I.

Wilcox is an African-American woman who was employed as a corrections officer at McRae Correctional Facility from April 5, 2004 until she was fired on July 28, 2010.  In December 2008, CCA fired Wilcox's husband, who had also been employed at McRae Correctional Facility, after an investigation into allegations of sexual harassment made by other employees.

In July 2009, Wilcox verbally complained to McRae's warden and human resources department that, after her husband was fired, she had been subject to sexual harassment by her direct supervisor.  In describing the harassment in her deposition and affidavit, Wilcox stated that her supervisor  (1) hugged and "caressed [her] down [her] back" on a daily basis for a period of months; (2) touched her thighs and told her that he could touch her "fat juicy thighs if he wanted to"; (3) hit her twice on the buttocks in the presence of other employees; and (4) told her that he had a female friend with a clitoris as long as his penis.

2

CCA fired Wilcox's supervisor in September 2009 following allegations of sexual harassment made by other female employees.[1]

Wilcox also made a number of internal and external complaints of racial discrimination and retaliatory conduct by other McRae employees. In June 2009, she complained that an assistant warden walked through a security checkpoint, retrieved his personal items from plastic basket, and threw the basket at her. Wilcox stated that she believed that the incident was racially motivated. After an investigation, CCA concluded that "no information was found to support a finding that [the assistant warden's actions] were hostile or intended as a form of harassment."

In July 2009, Wilcox complained that McRae's chief security officer addressed her and other African-American employees as "kid." CCA investigated this complaint and concluded that "no information was obtained to conclude that [the chief security officer's] use of the work [sic] 'kid' is limited to a specific race of employees . . . ."

In September 2009, Wilcox complained that a housing manager required her to sign in when she entered McRae's Special Housing Unit. At her deposition, she stated that she believed that the manager's conduct was retaliation for bringing a

---

[1] Between July and September 2009, Wilcox and her supervisor continued to work together. At his deposition, McRae's warden stated that he gave very little weight to Wilcox's allegations.

sexual harassment complaint against her supervisor because other employees had not been required to sign in.

Next, in December 2009, Wilcox complained that a McRae employee looked through and removed cookies and butter from a food cart that she was transporting. She described the incident as a search and stated that she believed that the search was in retaliation for bringing a sexual harassment complaint against her supervisor. After investigation, CCA determined that this incident was not intended to be retaliatory.

On December 13, 2009, Wilcox submitted an unverified Intake Questionnaire to the Equal Employment Opportunity Commission, in which she alleged that she had been forced to work with her supervisor even after she complained of sexual harassment; that the assistant warden had created a hostile work environment by throwing a basket at her; that the chief security officer referred to her as "kid"; and that she had been harassed in retaliation for complaining about sexual harassment. Three days later, the EEOC sent a "Notice of Charge of Discrimination" to CCA. This notice stated that Wilcox had alleged sexual harassment beginning on July 10, 2009. Wilcox later filed a verified "Charge of Discrimination" with the EEOC on March 15, 2010, in which she stated that "[t]his perfects my original correspondence which was timely received by the Commission on December 16, 2009."

4

Finally, in May 2010, Wilcox complained that a maintenance employee taunted her with a stick in a threatening manner.  After reviewing the surveillance footage and interviewing nearby employees, CCA concluded that Wilcox's allegations could not be substantiated.  Shortly after this incident, CCA fired Wilcox because of "a pattern of repeated unfounded claims against other staff members."

As relevant here, Wilcox's complaint alleged that her supervisor's sexual harassment resulted in hostile work environment and that she was fired in retaliation for lodging complaints of race and gender discrimination.  The district court granted CCA's motion for summary judgment on the sexual harassment claim because it found that the harassment described by Wilcox was not sufficiently severe or pervasive.  It also granted CCA's motion for summary judgment on the retaliation claim because Wilcox had not shown that CCA's proffered legitimate non-discriminatory reason for her termination—making false and exaggerated complaints in violation of CCA's Code of Conduct—was pretextual.  This appeal followed.

## II.

We first address Wilcox's sexual harassment claim.  We review de novo a district court's grant of summary judgment, considering only the evidence available to the district court.  Holloman v. Mail-Well Corp., 443 F.3d 832, 836

(11th Cir. 2006). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." Id. at 836–37. "A mere scintilla of evidence supporting [Wilcox's] position will not suffice; there must be enough of a showing that the jury could reasonably find for [her]." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quotation marks omitted).

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, prohibits sexual harassment that results in a hostile work environment. Mendoza v. Borden, Inc., 195 F.3d 1238, 1244–45 (11th Cir. 1999) (en banc). In order to prove a hostile work environment, an employee must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (en banc) (quoting Mendoza, 195 F.3d at 1245).

With respect to the fourth element, the harassment must be both subjectively and objectively severe or pervasive. See id. at 809. "Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as

6

severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive." Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000).

In evaluating whether harassment is objectively severe or pervasive, we consider its frequency; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1247–48 (11th Cir. 2004). "[W]e employ a totality of the circumstances approach, instead of requiring proof of each factor individually." Id. at 1248.

We have previously observed that there is no "magic number" of instances of harassment that is necessary to meet the severe-or-pervasive standard. See Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (quotation omitted). In this case, however, Wilcox did not state that she was merely subject to the occasional off-color comment. Instead, her deposition and affidavit describe harassment that a reasonable jury could conclude was severe or pervasive, including daily unwanted physical contact over a period of months, two additional attempts to touch her thighs and buttocks, and two expressly sexual comments. She also stated that the harassment was humiliating and interfered with her job performance. See Hulsey, 367 F.3d at 1248 ("We have said that sexual

7

harassment is subjectively severe and pervasive if the complaining employee perceived it to be at the time.  [The plaintiff's] deposition testimony indicates that she did." (citation omitted)).

Indeed, the conduct described here is similar to conduct that we have previously held to be severe or pervasive harassment.  See, e.g., Miller, 277 F.3d at 1276 (holding that daily taunts, including the use of ethnic slurs and derogatory names in an intimidating manner, over the course of one month were sufficiently severe or pervasive);  Johnson, 234 F.3d at 509 (holding that "roughly fifteen separate instances of harassment over the course of four months," including unwanted physical contact and sexually explicit comments, were sufficiently severe or pervasive).   Thus, when viewing the evidence in the light most favorable to Wilcox, we find that she has introduced sufficient evidence for a reasonable jury to conclude that her harassment was severe or pervasive.

### III.

CCA argues that we may alternatively affirm the district court's grant of summary judgment on Wilcox's sexual harassment claim because it is time barred. Prior to pursuing a Title VII claim in federal court, an employee must exhaust her administrative remedies, a process that includes filing a "charge of discrimination" in writing and under oath with the EEOC within 180 days of the last discriminatory

act.[2] <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir. 2001) (quotation omitted); <u>see also</u> 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified."). Although Wilcox's unverified Intake Questionnaire was filed on December 13, 2009—within 180 days of the alleged harassment—her verified Charge of Discrimination was not filed until March 15, 2010, more than 180 days after her supervisor was fired. Because Wilcox's Intake Questionnaire was not verified, CCA contends that it cannot serve as a charge of discrimination for the purposes of meeting the statute of limitations.

However, as the district court correctly pointed out, EEOC regulations permit an employee to amend a charge of discrimination to cure technical defects, "including failure to verify the charge," and provide that "[s]uch amendments . . . will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b); <u>see also</u> <u>Edelman v. Lynchburg Coll.</u>, 535 U.S. 106, 115, 122 S. Ct. 1145, 1150 (2002). In addition, the EEOC treated Wilcox's December 13, 2009 Intake Questionnaire as a charge of discrimination because it sent a "Notice of Charge of Discrimination" to CCA which specified that Wilcox had alleged sexual harassment beginning on July 10, 2009. <u>See</u> <u>Edelman v. Lynchburg Coll.</u>, 300 F.3d 400, 404–05 (4th Cir. 2002) (holding, following remand from the Supreme

---

[2] EEOC regulations provide that a charge of discrimination "is sufficient when the Commission receives . . . a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

9

Court, that verified charge related back to unverified letter where verified charge concerned the same circumstances as the unverified letter and there was no evidence that the unverified letter was substantively deficient).  Thus, we find that Wilcox's sexual harassment claim was not time barred and reverse the district court's grant of summary judgment on this claim.

IV.

We next consider Wilcox's retaliation claim.  "Title VII also prohibits retaliation against an employee because she has opposed any practice made an unlawful employment practice by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing thereunder."  Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (alterations adopted and quotation omitted).

For retaliation claims that rely on circumstantial evidence—like Wilcox's— we apply the burden-shifting analysis from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).  Under the McDonnell Douglas framework, a plaintiff may first establish a prima facie case of retaliation by showing that: "(1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment action; and (3) [s]he established a causal link between the protected activity and the adverse action."  See Bryant v. Jones, 575 F.3d 1281, 1307–08

10

(11th Cir. 2009). If a plaintiff establishes a prima facie case, "the burden of production shifts to the defendant to . . . articulat[e] a legitimate, non-discriminatory reason for the adverse employment action." Id. at 1308. If the defendant meets the burden of production, the plaintiff may demonstrate that the defendant's proffered reason was pretextual. Id.

To show pretext, "[t]he plaintiff must meet the reason proffered head on and rebut it." Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007). She must "present concrete evidence in the form of specific facts which show[] that the defendant's proffered reason [is] mere pretext." Bryant, 575 F.3d at 1308 (quotation omitted).

Notwithstanding the protections of Title VII, employers are permitted to fire employees for lying in the course of internal investigations into harassment and discrimination. See EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000) ("And, at least when the circumstances give the employer good reason to believe that the fictitious version was the result of a knowingly false statement by one of its employees, the law will not protect the employee's job."). In this case, Wilcox argues that she was fired because she filed internal complaints of harassment and discrimination. CCA has introduced evidence demonstrating that it did not terminate Wilcox's employment because she filed complaints, but because a number of her complaints were found to be false and exaggerated. For

11

example, in May 2010, after Wilcox alleged that a maintenance employee threatened her with a stick, CCA reviewed surveillance footage and interviewed twelve witnesses before concluding that her allegations could not be substantiated. Similarly, CCA investigated Wilcox's allegations that a supervisor referred to her and other African-American employees as "kid" before finding no evidence the supervisor's use of the word was discriminatory.

Wilcox has not rebutted CCA's proffered legitimate, non-discriminatory reason for termination. Thus, we affirm the district court's grant of summary judgment on her retaliation claim.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**