[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11919

_____

D.C. Docket No. 1:11-cv-04365-ODE

FELICIA A. WILCOX,

Plaintiff - Appellant,

versus

CORRECTIONS CORPORATION OF AMERICA,
a.k.a. McRae Correctional Facility,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 25, 2018)

Before TJOFLAT, ROSENBAUM, and BRANCH, Circuit Judges.

BRANCH, Circuit Judge:

Felecia[1] Wilcox sued her employer, Corrections Corporation of America, for sexual harassment resulting in a hostile work environment under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. At trial, she testified that she had complained to the company that her coworker had sexually harassed her, but the company failed to take prompt remedial action. The jury found in Wilcox's favor and awarded damages, but the district court later granted judgment as a matter of law for the company. Wilcox appeals and argues that the jury was entitled to find that the company failed to act promptly on her complaints. Because we disagree, we affirm.

## I.    BACKGROUND

In reviewing a judgment as a matter of law, we consider the facts in the light most favorable to Wilcox. See Bogle v. Orange Cty. Bd. of Cty. Comm'rs, 162 F.3d 653, 656 (11th Cir. 1998). Wilcox worked as a corrections officer at McRae Correctional Facility, a federal prison operated by Corrections Corporation of America. On July 10, 2009, Wilcox's coworker[2] Larry Jackson slapped her on the buttocks twice. Wilcox filed a formal complaint with the company that same day. The company told Jackson not to associate with Wilcox or be anywhere around her.

---

[1] This appeal is captioned as "Felicia A. Wilcox" because her counsel have spelled her name that way in court documents, but we note that Wilcox spells her own name "Felecia."

[2] Wilcox does not challenge on appeal the district court's ruling that Jackson was her coworker, not her supervisor.

In the days following Wilcox's complaint and the company's admonition not to associate with Wilcox, Jackson repeatedly rolled his eyes at Wilcox and once punched a metal machine in her presence to intimidate her. On July 23, Wilcox submitted a second complaint in which she reiterated that Jackson had hit her buttocks on July 10, adding that she was afraid he would touch her again, that this was not the first time that he had touched her, and that he had told her he could touch her if he wanted to. Wilcox concedes, however, that Jackson never touched her or made any inappropriate comments to her after her July 10 complaint.

The company brought in an outside investigator to look into these and other complaints against Jackson. On August 27, the investigator interviewed Wilcox, who told her about two additional times before July 10 that Jackson had sexually harassed her. On one occasion, Jackson squeezed her thigh and stated that he could touch her "juicy, fat thighs" if he wanted. On the other occasion, Jackson made a sexually explicit remark. On September 9, the investigator submitted her report finding that Jackson had sexually harassed Wilcox and other coworkers. On September 14, the company fired Jackson.

Wilcox later filed a charge of discrimination with the Equal Employment Opportunity Commission,[3] and she filed this lawsuit against the company under Title VII. The district court granted the company's motion for summary judgment

---

[3] It is undisputed that Wilcox received notice of her right to sue from the EEOC.

3

on Wilcox's sexual harassment claim, but we reversed because a triable issue of fact existed about whether the harassment was severe or pervasive.[4] Wilcox v. Corr. Corp. of Am., 603 F. App'x 862, 865–66 (11th Cir. 2015). On remand, a jury trial was held. The jury returned a verdict for Wilcox of $4,000 in actual damages and $100,000 in punitive damages. The company then renewed its motion for judgment as a matter of law, which the district court granted, finding that the company's prompt remedial action in response to Wilcox's complaints barred liability as a matter of law. Wilcox again appeals.

## II.    STANDARD OF REVIEW

We review a district court's grant of judgment as a matter of law de novo. Bogle, 162 F.3d at 656. We view the evidence and draw all reasonable inferences in Wilcox's favor, id., and we may affirm only if we conclude that "a reasonable jury would not have a legally sufficient evidentiary basis" to find for her, Fed. R. Civ. P. 50(a)(1).

## III.    DISCUSSION

To prevail in a suit against her employer for a fellow employee's sexual harassment that resulted in a hostile work environment, a plaintiff must prove five elements:

---

[4] Our prior decision emphasized that Wilcox alleged that Jackson had hugged her on a daily basis over a period of months. Wilcox, 603 F. App'x at 865.

(1)   The employee belongs to a protected group;

(2)   the employee was subject to unwelcome sexual harassment;

(3)   the harassment complained of was based upon sex;

(4)   the harassment complained of was "sufficiently severe or pervasive to alter the terms and conditions of employment"; and

(5)   a basis for holding the employer liable.

Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (en banc). With respect to the fifth element, the employer can be responsible for the harassing conduct under a theory of either vicarious liability or direct liability. Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012). When, as here, the perpetrator of the harassment is not the plaintiff's supervisor, the employer will be held directly liable only if it knew or should have known of the harassing conduct but failed to take prompt remedial action. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002). Only the fifth element is at issue in this appeal.[5] Wilcox argues that the company should have known about Jackson's extensive harassment and that it failed to act promptly and appropriately. We address the company's knowledge and action in turn.

---

[5] The fourth element, the severe or pervasive nature of the harassment, was a basis for our decision in Wilcox's earlier appeal, 603 F. App'x at 865, but it was waived in this appeal when Wilcox failed to address it in her initial brief. See United States v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004) (we refuse to consider issues raised for the first time in an appellant's reply brief).

## A.    Knowledge

An employee can demonstrate that an employer knew about the harassment by showing that she complained to management about it. Henson v. City of Dundee, 682 F.2d 897, 905 (11th Cir. 1982). The parties agree that the company had actual knowledge on July 10—the date of Wilcox's first complaint—that Jackson had slapped Wilcox's buttocks, and on September 9—the date of the investigator's report—that Jackson had sexually harassed Wilcox on two earlier occasions.

An employee can also show that the company should have known about harassment that was so pervasive as to create an inference of constructive knowledge. Id. Wilcox argues that the company should have known about additional harassment: Jackson's practice of inappropriately hugging her and other female employees, and Jackson's intimidating looks and gestures after she complained about him. We disagree. Wilcox testified that she never reported the hugging, and the other evidence of hugging in the record does not support the inference that the hugging was widespread or that others considered it offensive. Wilcox also never reported Jackson's intimidating conduct to the company, and the record contains no evidence that the company should have known about it at the time.

6

Furthermore, an employer is insulated from sexual-harassment liability based on constructive knowledge "when the employer has adopted an anti-discrimination policy that is comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress." Farley v. Am. Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir. 1997). The parties agree that the company had a comprehensive anti-discrimination policy that was well-known to Wilcox, but Wilcox disputes how vigorously it was enforced in her case. We cannot conclude that the company's policy was not enforced here. Wilcox filed a complaint in accordance with the policy's procedures, and as a result, Jackson was admonished, investigated, and terminated. With such a policy in place, the company cannot be liable for Jackson's harassment under a theory of constructive knowledge.

## B.    Action

To avoid liability for an employee's harassment, an employer must take prompt remedial action upon learning about the harassment. Henson, 682 F.2d at 905. Because that action "must be 'reasonably likely to prevent the misconduct from recurring,'" Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996) (quoting Guess v. Bethlehem Steel Corp., 913 F.2d 463, 465 (7th Cir. 1990)), we look to the effectiveness of the company's action in preventing the recurrence of the harassment it knew about. Here, the company's action was effective, and a reasonable jury would not have a legally sufficient evidentiary

7

basis to find otherwise. Jackson never again touched Wilcox after her July 10 complaint, notwithstanding her fear that he would do so.

The remaining issue, then, is whether the company's action was sufficiently prompt. Our cases have not established a bright-line rule for promptness, but we have held, for example, that an employer acted promptly enough when it agreed to fire the harasser if the victim complained about him again, and eventually did so. Huddleston v. Roger Dean Chevrolet, Inc., 845 F.2d 900, 904 (11th Cir. 1988). Here, the company ordered Jackson not to be around Wilcox immediately after her first complaint, and it fired Jackson two weeks after the investigator interviewed Wilcox and learned of her other complaints against him. Wilcox argues that six weeks between her first complaint and the investigator's interview was too long, but we disagree. It is undisputed that there were a lot of moving parts in the company's investigation, and each of those workings took time. Both of Wilcox's written complaints had to be examined internally and then referred out to the company's ethics office. Several other allegations against Jackson arose from other employees and had to be investigated. Another investigator had to be brought in from out of state, and she had to interview sixteen employees. Considering this entire succession of activity that culminated in Jackson's termination, we conclude that the evidence could not allow the jury to find that the company failed to act promptly.

8

## IV.    CONCLUSION

Because the company took prompt remedial action against Jackson, no reasonable jury could have found the company liable for his sexual harassment of Wilcox. The judgment of the district court is **AFFIRMED.**