[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11295
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-00316-CG-B


AMANDA VAUGHN,

                                                          Plaintiff-Appellant,

versus

RETIREMENT SYSTEMS OF ALABAMA,

                                                          Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(April 7, 2021)

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

The Mobile office of the Retirement Systems of Alabama apparently was not a happy one. Amanda Vaughn, who occupied the highest position in that office, clashed repeatedly with Lee McDonald, who was one of RSA's building managers and who was directly supervised by Vaughn starting in 2014. But this case is not about whether Vaughn or McDonald was to blame for this era of bad feelings. It is about whether RSA is liable under Title VII for failing to put an end to it, and for terminating Vaughn's employment in 2017. The district court granted summary judgment in favor of RSA, and we affirm.

## I.

The Retirement Systems of Alabama is a group of state entities that administer the public pension benefits for state employees. Vaughn was hired by RSA in 2007 as an Executive Assistant to Joe Toole, the Director of Real Estate, in Montgomery, Alabama. That position became a permanent one, and in 2014 Toole promoted her to be the Mobile properties operation manager. Two years later, Brant Hill, the director of construction and redevelopment, became Vaughn's supervisor.

As the Mobile properties operation manager, Vaughn directly supervised the Mobile building managers. One of them was Lee McDonald, who managed the RSA Battle House Tower. It seems that their relationship has been difficult for a while. Altercations between the two of them have been recorded as early as 2011, with an oral warning being issued to McDonald for confronting Vaughn "in a load [sic] voice." And that was not the only warning McDonald received. He was asked to "work in a proactive manner to alleviate problems" between himself and

2

Vaughn in October 2014, and he received a written reprimand in July 2015.  And written warnings were issued to both McDonald and Vaughn for an incident in December 2016, where a meeting between the two turned unprofessional.  The acrimony did not go unnoticed in the office either; one employee submitted a report criticizing McDonald and Vaughn for spending "more time worrying about each other than actually doing their jobs."  Matters came to a head in late 2016, when Vaughn sent an email to Hill in which she reported that Patrick Smith, a maintenance contract employee, informed her of violent statements by McDonald.  And soon thereafter, Vaughn sent Hill a formal complaint from Smith regarding those events.

Hill investigated, and his investigations resulted in him writing a recommendation to terminate Vaughn's employment.  His memorandum explained that an interview with a cleaning supervisor described Vaughn as having a "demeaning attitude" towards others.  Also, after receiving several written statements, Hill concluded that Vaughn promised Smith "a full-time job with RSA if he would make false statements to RSA about Lee McDonald."  That was, in Hill's words, the "last straw that broke the camel's back."  Toole agreed with Hill's recommendation, and signed it on March 28, 2017.  And as the appointing officer who had the ultimate authority in this matter, Dr. David Bronner signed the termination letter, which was dated March 29.  Vaughn's troubled tenure with RSA had ended.

Her suit against RSA, however, was just getting started.  Before Vaughn was terminated, she had filed a March 8 EEOC charge.  By mid-March, the human

3

resources director was notified of the charge, which he eventually took to the legal division. According to him, only the RSA staff in the legal or human resources divisions knew of the charge. In particular, the director testified that he did not want the EEOC charge "to be used, in any way, against" Vaughn, and that Toole and Hill "were not aware that [the EEOC charge] came in."

Vaughn then filed her complaint in federal district court to obtain relief for sex discrimination and retaliation. She brought three counts: (1) gender-based harassment when RSA did not put an end to the hostile work environment caused by McDonald's conduct; (2) gender-based discrimination in treating Vaughn differently than McDonald; and (3) retaliation when her employment was terminated after she filed an EEOC charge. Many depositions later, RSA moved for summary judgment.

The district court granted that motion. *First*, the court found that Vaughn's harassment claim failed because she could not show that RSA had either actual or constructive knowledge of the alleged gender-based harassment. *Second*, the court found that Vaughn did not show her termination was the product of gender-based discrimination because she presented no evidence that her employers were biased against her on account of her gender, and because McDonald was not a proper comparator. And *third*, the court granted summary judgment on Vaughn's retaliation claim, because it found that she did not establish a prima facie case of retaliation, and that she failed to show pretext in any event.

Vaughn now appeals.

## II.

We review de novo the district court's grant of summary judgment. *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1280 (11th Cir. 2020). The moving party bears the initial burden of showing that there are no genuine issues of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). But if the moving party meets that burden, then the non-moving party must demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Id.*

## III.

Vaughn's complaint alleges two sorts of claims: discrimination and retaliation. The district court found that RSA showed that there was no genuine dispute of material fact for either one, and that Vaughn did not rebut that showing. Because Vaughn has not shown actual or constructive knowledge of gender discrimination on RSA's part, and because she has not pointed to adequate evidence in the record that either Vaughn's gender or her EEOC complaint played a role in her termination, the district court's finding was not in error.

## A.

In Count I, Vaughn brings a hostile work environment claim under Title VII. Such a claim is established where "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Where the

5

source of harassment is a coworker (as opposed to a supervisor), the plaintiff "must show either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer." *Id.* at 1278. And the plaintiff must also show that the employer "failed to take immediate and appropriate corrective action." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003).

That notice requirement is why Vaughn's claim fails. RSA argued before the district court that it did not receive notice of gender-based harassment or discrimination until mid-March 2017, when it was notified of Vaughn's EEOC charge. The district court agreed, and we find no error in that decision. Between 2008 and 2017, Vaughn's emails and reports did not indicate that "severe" or "pervasive" harassment was occurring because of her gender. No doubt, the situation between Vaughn and McDonald was severely unpleasant, but Title VII is not a "general civility code." *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006). Vaughn has not shown more than a bitter "personal feud," which is not enough to make out a Title VII claim. *See McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) (quoting *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)). Nor does the record show actual knowledge; by Vaughn's own admission, she is not sure that she told anyone at RSA that McDonald's behavior was gender-based.

RSA thus received notice in March 2017, approximately two weeks before Vaughn was terminated. There were no allegations that Vaughn experienced gender-based discrimination or harassment after March 15. And Vaughn cannot

6

show a failure to take remedial action—RSA did respond to Vaughn's complaints about McDonald's behavior. And Vaughn's employment ended only two weeks after notice about the EEOC charge was received. *See Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1288 (11th Cir. 2018) (six weeks between the first complaint and interviewing the complainant did not make the employer's response late). RSA made this showing at the district court, and Vaughn has not shown a genuine dispute of material fact. So summary judgment on Count I was warranted.

B.

In Count II, Vaughn argues that RSA engaged in mixed-motive gender discrimination when it fired her. To analyze a summary judgment motion on that sort of claim, a court considers whether the plaintiff offered "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was *a* motivating factor for the defendant's adverse employment action." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1239 (11th Cir. 2016) (alterations adopted) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008)). The amount of evidence the plaintiff must present is enough for a reasonable jury to find the protected characteristic to be a motivating factor by a preponderance of the evidence. *Id.*

Vaughn has simply not presented that sort of evidence. The record cannot support finding that Vaughn's gender was at all considered by the powers that be when they terminated her employment. Instead, the record shows that she was terminated for a slew of other reasons, including alleged insubordination and allegedly promising an employee a state job in exchange for making false reports.

7

Vaughn argues that the fact she was terminated but McDonald was not should preclude summary judgment, because she claims that McDonald too was insubordinate. But McDonald was not accused of the same behavior and did not have the same job description, so he is not similarly situated. *See Lewis v. City of Union City*, 918 F.3d 1213, 1227 (11th Cir. 2019) (en banc). The fact that he was not terminated is not enough for Vaughn to show, by a preponderance of the evidence, that her termination was motivated by gender.

C.

Count III of Vaughn's complaint, that her termination was in retaliation for filing an EEOC charge, fares no better. To establish a prima facie case of retaliation, the plaintiff must show "(1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (internal quotation marks omitted). If the plaintiff succeeds in establishing a prima facie case, the employer must articulate "a legitimate, non-discriminatory reason for the employment action," and if it does so, the plaintiff must "demonstrate that the proffered reason was merely a pretext to mask retaliatory actions." *Id.* at 1135 (alterations adopted) (internal quotation marks omitted). That means she has to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* at 1136 (quoting *Jackson v. Alabama State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

Vaughn has failed to establish a prima facie case of retaliation, because she has not shown that the decisionmakers behind her termination even *knew* of her protected activity. "As a starting point for any retaliation claim, a plaintiff needs to show (among other things) that the decisionmaker actually knew about the employee's protected expression." *Martin v. Fin. Asset Mgmt. Sys.*, 959 F.3d 1048, 1053 (11th Cir. 2020). Here, the record shows that Hill did not know that Vaughn filed an EEOC charge when he made his recommendation to terminate her. Toole did not know of the EEOC charge at all until after she was terminated. And there is no evidence in the record that Bronner knew of the EEOC charge either. Vaughn argues that the Systems' general counsel, who did know of the charge, might have influenced the termination decision. But "unsupported speculation does not meet a party's burden of producing some defense to a summary judgment motion." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (alterations adopted) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)). And the decisionmaker's awareness of the EEOC charge cannot be established by "unsupported inference." *Martin*, 959 F.3d at 1053. So Vaughn's retaliation claim does not succeed either.

IV.

Vaughn and McDonald did not have a healthy work relationship. But regardless of who is to blame for the end of Vaughn's employment at RSA, she has failed to show that her employer violated Title VII. The district court's judgment is **AFFIRMED**.

9