[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12890

Non-Argument Calendar

_____

STEVE L. THOMAS,

Plaintiff-Appellant,

*versus*

WALMART, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-00545-MHC

_____

Before LAGOA, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Steve Thomas, proceeding *pro se*, appeals the district court's grant of summary judgment for Walmart, his former employer, on his sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and his failure-to-accommodate and retaliation claims under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*. He argues that his coworker's alleged sexual advances, his request for future medical leave, and his request to avoid trash-disposal duties because of health conditions all led to his retaliatory firing, and that Walmart should be held liable for his coworker's conduct.

Relatedly, he challenges the district court's reliance on certain declarations that Walmart submitted in support of its summary judgment motion. He argues that, in granting summary judgment, the court improperly relied on those declarations because there were factual inconsistencies among them, amounting to perjury.

Separately, he challenges the district court's pre-summary judgment denial of his motion for spoliation sanctions. Thomas argues that the court abused its discretion in denying his motion because Walmart knew its surveillance footage would be harmful, so it destroyed it, warranting the entry of default judgment in Thomas's favor.

Because Thomas's arguments fail on all fronts, we conclude that the district court did not err in denying the motion for sanctions or in granting the motion for summary judgment. Accordingly, we affirm the district court.

**I.**

Steve Thomas began working as a maintenance associate at the Walmart in Snellville, Georgia around October 2019. He alleges that, beginning in August 2021, another employee named Nathalee Gooden would sometimes approach him at work and speak to him. She complimented his vintage car and mentioned that she wanted to go for a ride in it, once asked whether he was married or dated, once asked where he lived, and once allegedly touched his arm to see whether he was wearing a ring. Thomas never complained about the behavior or otherwise alerted anyone at Walmart, other than briefly discussing the interactions with a supervisor "in a sort of hilarious fashion" that "wasn't in a . . . serious way."

As part of his normal work routine, Thomas would place trash into a compactor in the back of the store. One day while compacting trash, some of the waste fell onto Thomas's body. Frustrated, he began cursing. Gooden overheard the language and approached him, instructing him to calm down and refrain from using profanity. Gooden then says that Thomas began to verbally attack her, using profanity and making negative references to her race. Thomas concedes that he used profanity during the altercation and that he told her to get away from him. Gooden

immediately reported the incident to Jewel Hemphill, the temporary store manager, who then investigated the incident by interviewing Thomas, Gooden, and other associates in the area at the time of the altercation. When all associates corroborated Gooden's account of events, Hemphill fired Thomas after deciding that such behavior was inappropriate and inconsistent with Walmart's culture and values.

Separately, before the altercation with Gooden, Thomas requested a leave of absence with Walmart's third-party medical leave coordinator so he could undergo cancer treatment for six weeks beginning in October. His request was still pending at the time he was fired.

Thomas filed a *pro se* complaint against Walmart, alleging claims under Title VII and the ADA for sexual harassment, disability discrimination, and retaliation. He alleged that he worked under different terms of employment from similarly situated employees, faced sexual harassment, did not receive disability accommodations, was retaliated against, and was ultimately fired.

During discovery, he moved for spoliation sanctions, seeking a default judgment for Walmart's failure to preserve surveillance footage. The district judge found that Thomas's requests for footage were vague and overbroad and that the extreme sanction was unwarranted because he had not established the footage even existed. And even assuming it did exist, the court found that he hadn't established whether it would include audio, rendering it of little value given that he was fired for using profanity. Because

Walmart was at most negligent in failing to stop its ordinary document retention and destruction policy, default judgment—the sole remedy that Thomas sought—was unwarranted.

Following the close of discovery, Walmart moved for summary judgment on all claims. The district court granted the motion, finding that Gooden's conduct was not severe or pervasive and that even if it was, there was no basis for holding Walmart liable. It also found that Thomas had not been denied a disability accommodation because his request was still pending at the time of his termination. Thomas's retaliation claims were denied because, even assuming Thomas could state a prima facie case for retaliation, Walmart had articulated a legitimate, nondiscriminatory reason for his termination. Thomas timely appealed.

## II.

We review decisions regarding spoliation sanctions for an abuse of discretion. *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1310 (11th Cir. 2023). A grant of summary judgment is reviewed de novo, viewing the evidence in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party. *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1286 (11th Cir. 2018). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III.

Thomas raises five arguments on appeal. We will address each in turn.

#### A.    *Spoliation Sanctions*

Thomas first argues that the district court abused its discretion in denying his motion for spoliation sanctions. Rule 37(e) of the Federal Rules of Civil Procedure provides district courts with several options for imposing sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it." If the court finds "the party acted with the intent to deprive another party of the information's use in the litigation," it may "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2)(C). The intent to deprive element "is the equivalent of bad faith in other spoliation contexts." *Skanska*, 75 F.4th at 1312. "[B]ad faith generally means destruction [of evidence] *for the purpose of hiding* adverse evidence." *Id.* (quotation marks omitted). "This standard is more than mere negligence," *id.*, for "[m]ere negligence . . . does not sustain an inference of consciousness of a weak case." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1183 (11th Cir. 2020) (quotation marks omitted).

The district court did not abuse its discretion in denying Thomas's motion for spoliation sanctions. Because it found Thomas's requests for surveillance footage to be vague and overbroad, the court concluded that Walmart's actions were negligent

at most and lacking in bad faith. We agree that Walmart's behavior was nowhere near the willful and flagrant conduct needed to warrant the drastic sanction of a default judgment, such as willful and flagrant violations of court orders or obstructing the prosecution of a case. *See Malauetea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1538, 1543 (11th Cir. 1993). Because Walmart's conduct was merely negligent, the sole, case-dispositive remedy of default judgment that Thomas sought was unwarranted.

### B.    *Declarations at Summary Judgment*

Next, Thomas contends that the district court erred by relying on the declarations Walmart cited in its motion for summary judgment because those declarations contain factual inconsistencies amounting to perjury. A party asserting that there are no genuine disputes of material fact must support such an assertion by "citing to particular parts of materials in the record, including . . . affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). Whenever a matter must be supported by a declaration, it may be supported by an unsworn declaration, provided the person declares under penalty of perjury that the statements are true and correct. 28 U.S.C. § 1746.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," because "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). It is "[o]nly disputes over facts that might affect the outcome of the suit under the governing law [that]

will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. At summary judgment, although the "movant has the burden of showing that there is no genuine issue of fact," the "[non-movant] is not thereby relieved of his own burden." *Id.* at 256. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.*

The district court did not err in relying on the properly executed witness declarations Walmart cited in support of its summary judgment motion. All declarations stated that they were true and correct under penalty of perjury, and all complied with the statutory requirements for declarations. *See* 28 U.S.C. § 1746. To the extent that there are factual inconsistencies among the declarations, they were not material factual inconsistencies that otherwise would have precluded summary judgment—especially because those inconsistencies resulted from two witnesses' versions of events, rather than one witness relating the same event differently. Thomas's contention that the declarations "seem fraudulent" because they were executed within a few days of each other is an unsupported allegation insufficient to meet his burden of showing that summary judgment was improper.

## C.    *Sexual Harassment*

Thomas argues that the district court erred in concluding that Gooden's alleged sexual harassment was neither severe nor

pervasive. To establish a claim for sexual harassment under Title VII, an employee must prove: (1) that he belongs to a protected group; (2) that he encountered unwelcome sexual harassment; (3) that the harassment was based on his sex; (4) that "the harassment complained of was sufficiently severe or pervasive to alter the terms and conditions of employment"; and (5) that "a basis for holding the employer liable" exists. *Wilcox*, 892 F.3d at 1286–87 (quotation marks omitted).

To satisfy the fourth element, an employee must prove that his work environment was both subjectively and objectively hostile. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). In determining objectivity, we consider whether the conduct was (1) frequent, (2) severe, (3) physically threatening or humiliating, and (4) unreasonably interfering with the employee's job performance. *Id.* During this inquiry, all evidence is viewed "in context, not as isolated acts, and determine[d] under the totality of the circumstances." *Id.*

The district court did not err in granting summary judgment for Walmart on Thomas's Title VII sexual harassment claim because Gooden's conduct was neither severe nor pervasive. Complimenting Thomas's car, asking about his relationship status or where he resides in town, or touching his arm were infrequent events that neither threatened nor humiliated Thomas and did not interfere with his job performance. Her conduct evinced attempts by a co-worker to make conversation, a "natural and unavoidable occurrence when people work together." *Id.* at 1248. And because

Thomas failed to show the conduct was severe or pervasive, we need not consider Walmart's liability.

### D.        Failure to Accommodate

Thomas argues that the district court erred in granting summary judgment on his ADA failure-to-accommodate claim, both for his request to not work with the trash compactor in the back of the store and for his request for medical leave for cancer treatment. "To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that he (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of his disability." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (quotation marks omitted). Under the ADA, "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless doing so "would impose an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A).

We have recognized that "the employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made by an employee." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020) (quotation marks omitted). "Even if an employee is legally disabled, []he must specifically request an accommodation to trigger the employer's accommodation obligations." *Id.* Moreover, "if an employee does not require an accommodation to perform [his] essential job functions, then the employer is under no obligation to

make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided." *Id.*

The district court did not err in granting summary judgment for Walmart on Thomas's ADA failure-to-accommodate claim. His request for medical leave was still pending at the time of his firing, and we have never recognized a cause of action for failure to accommodate in the future. After all, the third element of stating a prima facie case of discrimination is that the individual *was* discriminated against. Thomas had not been denied an accommodation for medical leave for his cancer treatment and therefore cannot state a prima facie case for failing to accommodate. Likewise, Thomas failed to provide evidence that he made a request to avoid trash-compacting duties. Walmart's duty to accommodate could not be triggered until he first made a demand. *D'Onofrio*, 964 F.3d at 1022. Even if he had made such a request, the record reflects that Thomas was performing his job duties without issue, so Walmart was under no duty to accommodate. *Id.*

### E.    Retaliation

Thomas's final argument is that the district court erred in finding that his termination did not constitute Title VII or ADA retaliation. He contends that he was fired in retaliation for requesting to be removed from trash-compacting duties, that Gooden fed lies to his supervisors, and that his firing was pretextual because another employee used profanity while speaking on the phone without being fired.

"To make a *prima facie* case for a claim of retaliation under Title VII, a plaintiff must show (1) that [he] engaged in statutorily protected activity, (2) that [he] suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (*en banc*) (quotation marks omitted). The same showing is required to state a prima facie case for a claim of retaliation under the ADA. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021). If the plaintiff states a prima facie case, "[t]the burden of production then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for the employment action." *Gogel*, 967 F.3d at 1135; *see also Todd*, 998 F.3d at 1219. "If the employer produces such a reason, the presumption is rebutted, and the plaintiff must then demonstrate that the proffered reason was merely a pretext to mask [retaliatory] actions." *Gogel*, 967 F.3d at 1135 (quotation marks omitted); *see also Todd*, 998 F.3d at 1219. The pretext "inquiry . . . centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Gogel*, 967 F.3d at 1148 (quotation marks omitted).

The district court did not err in dismissing Thomas's retaliation claims. Even assuming Thomas stated prima facie cases of Title VII and ADA retaliation, Walmart stated a legitimate, non-discriminatory reason for firing Thomas—because he acted in an aggressive and hostile manner toward Gooden. Thomas cannot meet his burden of showing that Walmart's proffered non-discriminatory reason is pretextual because the undisputed record reveals that

the store manager decided to fire Thomas because he believed Thomas's inappropriate behavior toward Gooden created a work environment incompatible with Walmart's culture and values. Thomas does not point to any evidence in the record that the store manager did not honestly believe Thomas's behavior conflicted with Walmart's culture and values. *See Gogel*, 967 F.3d at 1148.

Generally, arguments not raised in the district court and raised for the first time on appeal will not be considered absent extraordinary circumstances. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331–32 (11th Cir. 2004). To the extent Thomas argues a "cat's paw" theory of liability for unlawful retaliation in violation of Title VII, he did not make this argument below, so we decline to consider it.

**IV.**

Accordingly, the district court is **AFFIRMED**.